# AFFIDAVIT of SGT. DANIEL P. BANASIK

I, DANIEL P. BANASIK, being first duly sworn, do depose and state that:

1. I am a Sergeant with the Missouri State Highway Patrol (MSHP), currently deputized and assigned, as a Task Force Officer (TFO), to the Drug Enforcement Administration (DEA) Drug Task Force. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in the "Controlled Substances Act," Title 21, United States Code.

2. Your affiant has been a sworn law enforcement officer for 28 years. I have received specialized training and attended numerous seminars presented by the MSHP and the DEA relating to the manufacture, distribution and/or possession with the intent to distribute controlled substances. From my training and field experience, I have extensive knowledge of complex illegal drug distribution and/or manufacturing organizations.

3. Based upon the information provided below, I believe that there is a probable cause basis to find that Kenneth R. FRIEND and Donette DAVIS, have committed criminal acts in violation of Title 21, United States Code, Section 846 and 841, that is conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. The following information in support of this probable cause belief is based upon affiant's personal knowledge and investigation in this case, as well as information made known to affiant by other agents and law enforcement officers in southwest Missouri.

4. In early 2014, the Drug Enforcement Administration in conjunction with the Missouri State Highway Patrol and Springfield, Missouri Police Department initiated an investigation into the Kenneth R. FRIEND methamphetamine distribution network. This investigation led officers to apply for a Title III wiretap for cellular telephone number 417-365-2085, a telephone used by FRIEND. The wiretap was granted on October 6, 2014, allowing the interception of telephone calls and text messages from FRIEND's cellular telephone. On November 4, 2014, an extension of the wiretap on FRIEND's cellular telephone was granted.

5. On October 15, 2014, officers intercepted a telephone call between FRIEND and Donette DAVIS. During the call, DAVIS told FRIEND that she was going to Lowe's and asked FRIEND if he wanted to go with her. FRIEND said he did not want to go, but told DAVIS he needed a 30" door. DAVIS then asked FRIEND again if he wanted to go with her, and FRIEND began yelling at DAVIS and said, "I got this fucking dope and shit out bitch are you serious?" DAVIS responded and said, "You can't put it up?" FRIEND, still yelling, then said, "Just leave it all laying out?" DAVIS again asked, "You can't put it up?" FRIEND, still yelling said, "I really don't understand why you trying to get me out of the house while I have all this shit laid out." The call then ended.

6. On October 16, 2014, at 9:29 p.m., a telephone call was intercepted on a Title III order established on the telephone of Kenna HARMON's, 417-399-4225, which was

outgoing to FRIEND's telephone number. DAVIS answered the telephone. During this telephone call, DAVIS stated that FRIEND had been trying to get a hold of HARMON. HARMON stated that her phone had been on "silent." HARMON said she had tried to call FRIEND with numerous telephones. HARMON asked DAVIS, "What is everyone saying about those two friends you took the other day?" Based upon previous wiretap intercepts, I believe that HARMON, in referring to "two friends" was referring to a delivery of two pounds of methamphetamine to FRIEND. DAVIS stated that no one was saying anything about them yet, because FRIEND had not "touched them." HARMON asked, "He hasn't touched them yet, he still got her work?" HARMON further stated, "If he ain't touched them tell him not to, tell him to check them and make sure they are up to par." HARMON stated that some were and some were not "up to par" which I believe based upon my review of the previous wiretap intercepts, to refer to the quality of the methamphetamine. HARMON stated that FRIEND was one of her "biggest people right now," so HARMON wanted to make sure he is "not sad." DAVIS stated that she would talk with him about it.

7. On October 17, 2014, at 6:51 p.m., a telephone call was intercepted on the Title III which had been established on FRIEND's telephone number to HARMON's telephone. During the conversation, FRIEND asked HARMON, "How much did I miss your call by?" HARMON stated, "Oh, a couple minutes, okay, I called, I tried calling Donette too and she, I don't think she knows the number yet, so I was like it's okay." FRIEND stated, "She's out, she's asleep." HARMON stated, "Oh, I need to go and do that, grab that thing real quick and I needed someplace to go with it." FRIEND stated, "Okay come on." HARMON replied, "And find, so can I come to you." FRIEND stated, "Come on, let me know." HARMON said, "Okay, well, clean out your house, keep everybody out of there and I'm going to go by there now and do that." At 7:37 p.m. on October 17, 2014, FRIEND sent a text to HARMON's telephone that stated, "Call before u come." An outgoing telephone call was later intercepted on the Title III on FRIEND's telephone to HARMON's telephone. During this conversation, HARMON stated. "Hey I'm almost there." FRIEND said, "Hey, ugh, hold on, alright (inaudible) go around the block one time." HARMON stated, "Past National." FRIEND stated, "Turning on National?" HARMON replied, "(Inaudible) you know what I got on me, tell them to go." FRIEND stated, "Alright, alright, I'll tell them to go, alright."

8. On October 17, 2014, while the above wire and electronic communications were being intercepted between FRIEND's telephone and HARMON's telephone, agents were conducting surveillance on HARMON. Agent observed HARMON travel to the Eastway Storage Center at 3156 E. Division, Unit #B16, Springfield, Missouri. Based on my involvement in this investigation, as well as review of calls intercepted from HARMON's telephones, I believe that HARMON utilizes Unit #B16 to store methamphetamine that she distributes. HARMON left the storage unit and traveled to the 500 block of East Sunshine. After a vehicle is seen leaving FRIEND's residence located at 504 E. Sunshine, Springfield, Missouri, HARMON drove around the block once and then parked in the driveway of FRIEND's residence.

9. On October 23, 2014, officers intercepted a telephone call between FRIEND and DAVIS. During the call, FRIEND asked DAVIS what she was doing and DAVIS said she

was "doing money." FRIEND asked why she was "doing money" and DAVIS said she was "gonna take money and go." FRIEND asked, "How much money is there?" DAVIS said, "By my calculations we have seventy-seven ten here." FRIEND then told DAVIS to take "twenty-seven ten leave the five thousand there."

10.  On October 30, 2014, officers intercepted a telephone call between FRIEND and DAVIS. During the call, FRIEND told DAVIS he was "Getting ready to leave here right now." DAVIS asked, "Where, oh down there?" and FRIEND said, "He didn't give me nothing." FRIEND then said, "Ok, well I'll see you in a little bit, if you want to, that weed is in the safe right there in the drop safe." DAVIS said, "Yeah." FRIEND said, "Weigh out right about a quarter of it, I want fucking sixty-five bucks for it." DAVIS asked, "In the drop safe?" FRIEND said, "Yeah, and I need the fucking, uh, I need the money he owes me on the other."

11.  On October 31, 2014, officers intercepted a telephone call between FRIEND and DAVIS. During the call, DAVIS told FRIEND that "Neil" was "there." DAVIS then said, "Anyway, I'm going to take this and I'll put it in, I'll drop it in." FRIEND asked, "What's there?" DAVIS said, "I think he gave me three."

12.  On November 6, 2014, at approximately 6:59 p.m., FRIEND placed a call to Eric MCCLANAHAN which led officers to believe FRIEND was intending to purchase a large amount of methamphetamine from MCCLANAHAN. During the conversation, FRIEND said he could "take all of it" and told MCCLANAHAN that he (FRIEND) had $10,000.00 of his own money right now and would have the other "20" tomorrow. MCCLANAHAN said if it happened, he (MCCLANAHAN) would have "them" come back down the following day with "three more." FRIEND then told MCCLANAHAN that he would take those also. At approximately 9:57 p.m., FRIEND received a call from MCCLANAHAN, where MCCLANAHAN told Friend that he was "headed to you directly." At approximately 10:22 p.m., the Missouri State Highway Patrol, at the request of DEA, conducted a traffic stop on MCCLANAHAN. A search of MCCLANAHAN's truck located a black plastic box attached to the inner wheel well with magnets, which contained approximately two pounds of methamphetamine.

13.  On November 27, 2014, officers intercepted telephone calls over a T-III intercept established on FRIEND's telephone, which led the officers to believe FRIEND was intending to purchase a large amount of methamphetamine from HARMON. As result of these telephone conversations, agents decided to traffic stop both HARMON and FRIEND as they left their respective residences to meet to engage in the methamphetamine distribution activity. Kenna HARMON was traffic stopped in her blue BMW 545i while traveling east bound at the 3000 block of West Sunshine, in Springfield. HARMON had just left her residence at 648 Dana, Republic, Missouri. During the search of HARMON's vehicle, officers discovered a small amount of methamphetamine, $5,000 in United States currency, and marijuana, all of which was found on either HARMON's person, or within the vehicle.

14. When HARMON left her Republic residence, agents conducting surveillance observed a black Ford Mustang was parked in the driveway. The Mustang was followed to 1906 S. Grant, Springfield, Missouri, where SPD initiated a traffic stop on the vehicle. The vehicle pulled into a parking lot and the driver of the vehicle, later identified as Anthony VAN PELT, fled from the vehicle. Nikki PILE was the front passenger of the vehicle who stayed with the vehicle. PILE identified VAN PELT as the driver of the vehicle. A search of the vehicle yielded approximately $20,000 in United States currency.

15. Due to the investigation, agents believed VAN PELT could have run to 1947 S. Missouri, Springfield, Missouri, for which agents had already obtained a federal search warrant. SPD established a perimeter around the residence until a SPD entry team could respond to the residence. The SPD team made entry on the residence where they found VAN PELT in the master bedroom of the residence, hiding under a bed. VAN PELT was arrested on an outstanding arrest warrant out of Camden County Missouri for Failure to Appear in Court on an original charge of Possession of a Controlled Substance. Inside the residence, agents found firearms in the master bedroom where VAN PELT was hiding. Approximately 1 pound of methamphetamine, marijuana, and $3,000 in United States currency was found in a hidden safe by the master bedroom. Agents, in the garage of the residence, found a duffel bag that contained approximately 20 pounds of marijuana and 2 additional pounds of methamphetamine.

16. After his arrest, VAN PELT provided a statement to law enforcement admitting that he obtained methamphetamine from a source of supply in Kansas City, Missouri, and then redistributed some of that methamphetamine to HARMON.

17. On November 27, 2014, a federal search warrant was executed at 648 Dana, Republic, Missouri. Agents found at the residence approximately $20,000 in United States currency, approximately 5 ½ pounds of methamphetamine, and a loaded handgun found in a nightstand in HARMON's bedroom.

18. Also on November 27, 2014, surveillance was conducted at FRIEND's residence, 504 E. Sunshine, Springfield, Missouri. Agents observed FRIEND and DAVIS leave the residence together in a vehicle. A vehicle enforcement stop was conducted on the vehicle. A search of the vehicle resulted in the seizure of approximately $35,000 of U. S. currency located in DAVIS's purse.

19. Agents then conducted a search of FRIEND's residence, pursuant to a federal search warrant. The search resulted in the seizure of a small amount of methamphetamine, two safes, a money counter, and a digital scale.

20. After his arrest, FRIEND was advised of his rights under Miranda and agreed to be questioned by law enforcement. FRIEND admitted that he obtained methamphetamine from HARMON for distribution and that the $35,000 discovered inside DAVIS's purse was money that FRIEND intended to provide HARMON in exchange for methamphetamine.

21. Based upon my training and experience, the amount of methamphetamine seized in this investigation represents a distribution amount.

*[signature]*
DANIEL P. BANASIK,
Sgt. Missouri State Highway Patrol
Task Force Officer, DEA

Subscribed and sworn to before me in my presence on this 28th day of November, 2014.

*[signature]*
DAVID P. RUSH
United States Magistrate Judge